UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JACK FITZPATRICK, Individually and as Father and Legal and Natural Guardian of D.F. (a minor), | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:07-CV-259-RBC |
| CITY OF FORT WAYNE, and OFFICER BOBBY LEMON, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

On November 4, 2005, E.J., a student at Miami Middle School in Fort Wayne, Indiana, was attacked by a group of boys in the school's hallway and later in the boys bathroom, where they repeatedly kicked him. A security camera recorded the events in the hallway but not in the boys bathroom. As the footage shows, another student, D.F., was walking nearby when the group of boys converged on E.J., and he briefly ran into the bathroom after E.J. was dragged inside.

Fort Wayne Police Officer Lemon was called investigate the incident. When interviewed, E.J. could not identify any of the attackers, but he made a comment to Officer Lemon indicating that while D.F. was present, he was not involved. Notwithstanding E.J.'s statement, Officer Lemon arrested all the boys shown in the video as having entered the bathroom, including D.F.

Plaintiff Jack Fitzpatrick, individually and as father and legal and natural guardian of

D.F., brings this action against the Defendants, the City of Fort Wayne and Fort Wayne Police Officer Bobby Lemon, advancing claims of false arrest and false imprisonment under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments, as well as state law claims of false arrest and false imprisonment, and a conspiracy claim under 42 U.S.C. § 1985.[1]

On December 1, 2008, Defendants filed a motion for summary judgment (Docket # 37), contending that (1) they cannot be liable under § 1983 for false arrest or false imprisonment because there was probable cause to arrest D.F.; (2) Officer Lemon is entitled to both qualified immunity for the claims brought under § 1983 and immunity for the state law claims under the Indiana Tort Claims Act; (3) the City cannot be liable on Fitzpatrick's § 1983 claim because he does not assert an unconstitutional policy or custom; (4) the state law tort claims fail as a matter of law; (5) Fitzpatrick has no viable claim for punitive damages; and (6) there is no evidence to support a § 1985 conspiracy claim.

In response (Docket ## 40-41), Fitzpatrick argues that there was no probable cause to arrest D.F. and thus his false arrest and false imprisonment claims remain viable. He further clarified that he is proceeding against Officer Lemon with respect to both the § 1983 and state law claims, but is suing the City solely on a state law tort theory of *respondeat superior*. He also disputes Officer Lemon's entitlement to qualified immunity or immunity under the Indiana Tort Claims Act. Fitzpatrick concedes that he cannot pursue punitive damages against the City, but nevertheless argues that they are warranted against Officer Lemon. Finally, Fitzpatrick states that he is abandoning his § 1985 conspiracy claim against Defendants.

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

On February 2, 2009, Defendants filed their reply, as well as a motion to strike certain statements contained in the affidavits relied upon by Fitzpatrick. (Docket ## 42-44.) Fitzpatrick responded on February 12, 2009 (Docket # 46), and a period of supplemental briefing on these motions has since concluded (*see* Docket ##  48-51, 53-54).

For the reasons provided in this Opinion and Order, the Defendants' motion to strike will be DENIED in part and is deemed MOOT in part, and their motion for summary judgment will be GRANTED in part and DENIED in part.

## II.  THE DEFENDANTS' MOTION TO STRIKE

### *A.  Applicable Legal Standard*

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).  "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos*., No. 2:04-cv-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id*.; *see also Stromsen v. Alumna Shield Indus., Inc*., No. 89-C5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993); *Toro Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986, 989 (N.D. Ind. 1986); Charles Alan Wright, et al., *Federal Practice & Procedure* § 2738 (3d ed. 2006).  Specifically, the following statements are not

properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) self-serving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); and (5) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

### *B. Discussion*

The Defendants seek to strike numerous paragraphs from the supporting affidavits Fitzpatrick submitted in response to the motion for summary judgment. Ultimately, the Court will address only the Defendants' objection to one statement in paragraph 3 of the affidavit of E.J., the victim of the attack, because that statement is central to the motion for summary judgment. The Court need not address the balance of the motion to strike, because even if those statements are ignored, the Defendants' motion for summary judgment must still be denied.

Paragraph 3 of E.J.'s affidavit reads as follows:

> On [November 4, 2005], an incident occurred in which I was pulled into the boys bathroom and attacked by a large group of boys. Not every boy in the bathroom at the time took part in the attack, however. Right before the group threw me on the floor, I saw [D.F.] between two of the boys, with his arms open and spread out like a plane, *as if trying to hold them away from me.* When I was on the floor, many of the boys kicked me. The attack itself lasted only a few seconds. Everyone in the restroom but one boy named TJ then ran out. He and [D.F.] were both arrested, as were the others in the bathroom.

(E.J. Aff. ¶ 3 (emphasis added).)

The Defendants seek to strike E.J.'s statement that he saw D.F. with his arms out "as if trying to hold them away from me," arguing that E.J. does not say he actually told this to Officer

4

Lemon, and thus it cannot now be considered to determine probable cause. (Defs.' Br. in Supp. of Mot. to Strike 5.)

Fitzpatrick counters that paragraph 3 is admissible and should be read in conjunction with paragraph 4 of E.J.'s affidavit, which is not subject to the motion to strike. Significantly, E.J. says in paragraph 4, "When I spoke with Officer Lemon about what happened, I told him I didn't see who was kicking me. *I told Lemon about seeing [D.F.] with his arms out.* I never told him that [D.F.] was one of the attackers." (E.J. Aff. ¶ 4 (emphasis added).) Thus, the two paragraphs, when read together, indicate that E.J. did in fact tell Officer Lemon about seeing D.F. with his arms out, acting as if he was trying to keep the other boys away from him.

In short, when reading the affidavit as a whole, *see, e.g., Wachel v. First Colony Life Ins. Co.*, No. 2:08-CV-292-PRC, 2008 WL 73647, at *8 (N.D. Ind. Jan. 4, 2008) (reading an affidavit "as a whole" and two of its paragraphs in conjunction with one another), it is reasonable to conclude that E.J. told Officer Lemon before he arrested D.F. that D.F. had his arms out as if to hold attackers away from E.J. As the Defendants concede, what Officer Lemon knew before the arrest is clearly relevant to his probable cause determination. Consequently, the Defendants' motion to strike will be DENIED as to paragraph 3 of E.J.'s affidavit.

### III. FACTUAL BACKGROUND[2]

During the late morning of November 4, 2005, D.F. was walking with a male friend down the hallway of Miami Middle School between class periods. (D.F. Aff. ¶ 3.) As can be seen in the video, D.F. was wearing a gray and black sweatshirt with a hood on it and the words

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Fitzpatrick, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The Court viewed the school video recording submitted as part of the record.

5

"South Pole" across the chest, and his friend was wearing a white shirt with stripes. (D.F. Dep. 17; D.F. Aff. ¶ 3.)

After they passed the boys bathroom, the two boys stopped briefly in front of three drinking fountains. (Def. Ex. 4, CD Rom Recording from the Miami Middle School Surveillance Camera (hereinafter, "Recording"), Time Stamp 1:43-1:44.) D.F. turned and looked towards the bathroom doorway where another boy was standing, then turned and walked down the hall away from the bathroom. (Recording, Time Stamp 1:47-1:52.) D.F. walked past another student in the hall, whom he recognized as his friend E.J., just as a group of boys surrounded E.J. and pulled him away from the lockers that lined the far wall of the hallway. (D.F. Aff. ¶ 3; Recording, Time Stamp 1:51-1:53.) D.F. did not join the group and did not touch E.J., but instead immediately turned and watched as the group pulled E.J. across the hallway and into the bathroom. (Recording, Time Stamp 1:53-1:57.) D.F. did not know what was going on. (D.F. Aff. ¶ 3.) After the group of boys took E.J. into the bathroom, D.F. and his friend then ran into the bathroom to see what was happening. (D.F. Aff. ¶ 3; Recording, Time Stamp 1:57-2:00.)

Once inside the bathroom, the group of boys surrounded E.J., threw him to the ground, and kicked him. (D.F. Aff. ¶ 4; E.J. Aff. ¶ 3; Lemon Aff. ¶¶ 8-9.) Right before the group threw E.J. on the floor, E.J. saw D.F. between two of the boys, "with his arms open and spread out like a plane, as if trying to hold them away from [him.]" (E.J. Aff. ¶ 3.) Shortly after, one boy exited the bathroom, followed by D.F. (D.F. Aff. ¶ 4; Recording, Time Stamp 2:03-2:08.) D.F. then went to class. (D.F. Aff. ¶ 6.)

Upon report of the incident, the school administration called in Fort Wayne Police

6

Officer Bobby Lemon, the school's resource officer. (Lemon Aff. ¶ 5, 6; Donald Aff. ¶ 3.) Officer Lemon then spoke with E.J., who, according to Officer Lemon, stated that he could not see any of the boys who pulled him into the bathroom or kicked him. (Lemon Aff. ¶¶ 8, 10.) E.J. told Officer Lemon that once the attack ended, the attackers ran out of the bathroom, but he did not tell Officer Lemon that everyone who ran out of the bathroom was an attacker. (E.J. Aff. ¶ 4.) According to E.J., he told Officer Lemon about seeing D.F. with his arms spread out, "as if trying to hold [the attackers] away from me." (E.J. Aff. ¶¶ 3, 4.)

Officer Lemon then viewed a video of the hall outside the bathroom where the incident occurred. (Lemon Aff. ¶ 13.) The video captured the activity outside the bathroom before, during, and after the attack. (*See* Recording.) The video shows that D.F. never participated in the hallway assault on E.J.; rather, it shows him merely watching. (Recording, Time Stamp 1:43-2:00.) The video also shows D.F. leaving the bathroom before the group of boys who grabbed E.J. in the hall. (Recording, Time Stamp 2:07-2:18.)

Meanwhile, during one of D.F.'s classes, a teacher, Mr. Eldridge, pulled D.F. out of class and spoke with him about the incident. (D.F. Aff. ¶ 6.) D.F. admitted to Mr. Eldridge that he knew E.J. had been attacked and provided the names of two of the boys who participated. (D.F. Aff. ¶ 6.) Later that afternoon D.F. was called to the school office. (D.F. Aff. ¶ 7.)

When D.F. arrived at the school office, he was placed in a room with about eight other boys whom he had seen in the bathroom during the attack. (D.F. Aff. ¶ 7.) Officer Lemon then came in and questioned the boys as a group. (D.F. Aff. ¶ 7.) At the time of the questioning, Officer Lemon was in his police uniform and on duty as a police officer with the City of Fort Wayne. (D.F. Aff. ¶ 12; Defs.' Answers to Pl.'s Revised First Set of Interrogs., and Req. for

7

Produc. of Docs. and Things No. 2.)  Vice Principal Kathy Donald was present for at least part of the group questioning.  (Donald Aff. ¶ 3.)  Officer Lemon never questioned D.F. or any of the other students in the group individually.[3]  (D.F. Aff. ¶ 7; Donald Aff. ¶ 3.)  No one confessed or implicated anyone else.  (D.F. Aff. ¶ 7; Lemon Aff. ¶ 16.)

Officer Lemon told Vice Principal Donald that since none of the boys would talk, he was "taking all of the boys in."  (Donald Aff. ¶ 4.)  Officer Lemon then arrested all of the boys, including D.F.  (D.F. Aff. ¶ 11.)  The eight boys were then taken to the Juvenile Detention Center and charged.  (D.F. Aff. ¶¶ 8, 11; Lemon Aff. ¶ 20.)  D.F. was subsequently charged with battery, criminal confinement, and criminal gang activity.  (D.F. Aff. ¶ 11; Fitzpatrick Aff. ¶ 2; Preliminary Inquiry and Detention Hearing Order 1; Lemon Aff. ¶ 21.)  D.F. remained in the Detention Center for approximately four days before being released on home detention.  (D.F. Aff. ¶ 11.)

## IV.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P 56(c).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

---

[3] Officer Lemon disputes this point, contending that he and the school's principal spoke with each student individually about their involvement in the attack.  (Lemon Aff. ¶ 15.)

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

### *B. Discussion*

#### *1. Section 1983 and State Law Claims Against Officer Lemon*

Fitzpatrick's § 1983 claims allege that Officer Lemon falsely arrested, falsely imprisoned, and subjected D.F. to an unreasonable seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Section 1983 provides that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. In addition, Fitzpatrick alleges Indiana state law claims of false arrest and false imprisonment. The Court will address these federal and state claims together since the analysis is essentially the same. *See, e.g., Phelps v. Hamer*, No. 1:02-CV-1912-DFH-VSS, 2004 WL 1146489, at *5 (S.D. Ind. May 10, 2004) (collecting cases indicating that Indiana law concerning false arrest and probable cause parallels federal law).

a. <u>Probable Cause Standard</u>

Defendants assert that summary judgment is appropriate on D.F.'s false imprisonment or false arrest claims because Officer Lemon had probable cause. Indeed, "[p]robable cause is an

9

absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. Ill. 2008); *see also Gomez v. Adams*, 462 N.E.2d 212, 222 (Ind. Ct. App. 1984) ("Proof of absence of probable cause is essential to a recovery for false arrest."); *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1104 (S.D. Ind. 2008) ("Generally, to succeed upon a claim of false arrest or false imprisonment, Indiana law requires a plaintiff to establish the absence of probable cause for the arrest.").[4]

"A police officer has probable cause to arrest 'if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Chelios*, 520 F.3d at 686 (quoting *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007)) (internal quotation marks omitted); *see also N.J. ex rel. Jackson v. Metro. Sch. Dist. of Washington Twp.*, 879 N.E.2d 1192, 1195 (Ind. Ct. App. 2008) ("Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense." (citation omitted)). "The court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d

---

[4] As background, false imprisonment under Indiana law is "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). "False imprisonment may be committed by words alone, or by acts alone, or by both and by merely operating on the will of the individual, or by personal violence, or both." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. App. 2001) (citation omitted). The Indiana Supreme Court has stated that "inasmuch as [the plaintiff's] claim for false imprisonment stems from his alleged false arrest, [the court] need not make a separate analysis for the former." *Row v. Holt*, 864 N.E.2d 1011, 1016 n.4 (Ind. 2007) (citation omitted).

544, 547 (7th Cir. 2006) (internal quotation marks and citation omitted). "The probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Chelios*, 520 F.3d at 686 (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)); *see also Duvall v. Kroger Co.*, 549 N.E.2d 403, 405-06 (Ind. Ct. App. 1990) ("Probable cause is normally an issue for the jury's determination. However, if the facts are undisputed, probable cause is for the court to determine as a matter of law." (citation omitted)).

    b.    <u>Analysis</u>

If probable cause existed to arrest D.F. on any of his charges, his false arrest claims fail. *See Ochana v. Flores,* 347 F.3d 266, 271 (7th Cir. 2003); *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1102 (S.D. Ind. 2008) ("Where an individual is arrested on multiple charges, a finding of probable cause for any one of the charges is sufficient to negate a § 1983 claim for false arrest."). "Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). In this instance, however, and despite the Defendants' contentions, summary judgment must be denied because there is a material factual dispute concerning what was told to Officer Lemon, what he purportedly knew, and consequently, whether probable cause existed to arrest D.F. for battery, criminal confinement, and criminal gang activity.

Under Indiana law in 2005, a person commits misdemeanor battery if he "knowingly or intentionally touche[d] another person in a rude, insolent, or angry manner. . . ." Ind. Code § 35-42-2-1(a)(1).

Indiana Code § 35-42-3-3, as it read in 2005, defined criminal confinement, a felony, as

11

follows: "A person who knowingly or intentionally: (1) confines another person without the other person's consent; or (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another; commits criminal confinement." Ind. Code § 35-52-3-3(a).

Lastly, in 2005, Indiana's criminal gang activity statute provided as follows:

> As used in this chapter, 'criminal gang' means a group with at least five (5) members that specifically:
> (1) either:
>     (A) promotes, sponsors, or assists in; or
>     (B) participates in;
> or (2) requires as a condition of membership or continued membership;
> the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery . . . .

Ind. Code § 35-45-9-1.

The Defendants contend that Officer Lemon had probable cause to arrest D.F. and the other students on all three criminal charges "[b]ased on the videotape showing the nine students going into the bathroom immediately prior to the victim being attacked and then running out of the bathroom; [their] refusal to provide any information as to who was involved; and the victim's description of the events that occurred in the bathroom[.]" (Defs.' Br. in Supp. of Mot. for Summ. J. 9-10.) Moreover, the Defendants maintain in particular that there was probable cause to arrest D.F. for battery because he was observed entering the bathroom during the attack and was recorded running out of the bathroom at the same time as one of the other suspects. (Defs.' Br. in Supp. of Mot. for Summ. J. 10.) They also argue that Officer Lemon had probable cause to arrest D.F. for criminal confinement, apparently because he watched the hallway assault and abduction. (Defs.' Br. in Supp. of Mot. for Summ. J. 10.) Finally, the Defendants assert that there was probable cause to arrest D.F. for criminal gang activity because he "was one of the nine students that was suspected in participating in and/or sponsoring the attack on the victim."

12

(Defs.' Br. in Supp. of Mot. for Summ. J. 10-11.)

The short answer to these arguments is that a reasonable jury could conclude, upon a review of all the evidence, that Lemon's decision to arrest D.F. rested solely upon D.F.'s mere presence, or spectatorship, at a schoolhouse fight. It is well-established, however, that a person's mere presence or "mere propinquity to . . . criminal activity does not, without more, give rise to probable cause . . . ." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). "The 'seizure of a person must be supported by probable cause particularized with respect to that person.'" *Irvin v. Kaczmaryn*, 913 F. Supp. 1190, 1198 (N.D. Ill. 1996) (quoting *Ybarra*, 444 U.S. at 91) (finding a question of material fact as to whether an officer had probable cause to arrest the plaintiffs because their "mere proximity" to criminal activity did not, "without more, give rise to probable cause").

More to the point, there is no evidence that D.F. committed a battery or criminal confinement, as the video shows that he never even touched E.J., at least while in the hallway, and probable cause for the criminal gang activity charge is also lacking because the video does not show that he participated in E.J.'s battery. Indeed, the video itself could be viewed as somewhat exculpatory, as it shows that D.F. did not enter the bathroom with the group of boys holding E.J., but paused in the hallway and then entered (perhaps out of curiosity), and was then one of the first to leave.

Moreover, and significantly, there is a material issue of fact bearing upon Officer Lemon's knowledge prior to the arrest. According to E.J., he told Officer Lemon that D.F. actually had his arms out to keep the boys away from him, essentially exculpating D.F. A reasonable fact finder could therefore conclude that Officer Lemon arrested D.F. even after learning information from the victim that eliminated D.F. as a suspect. "[T]he determination of

13

probable cause involves an examination of all the circumstances known to the officer at the time of the arrest . . . *including exculpatory information*." *Haywood v. City of Chicago*, No. 01 C 3872, 2002 WL 31545883, at *2 (N.D. Ill. Nov. 15, 2002) (citation omitted and emphasis added); *see also Row v. Holt*, 834 N.E.2d 1074, 1085 (Ind. App. 2005) (finding an issue of fact regarding whether an officer could reasonably conclude that he had probable cause in part because "the cursory investigation had already revealed the existence of important and potentially exculpatory evidence"), *vacated on other grounds,* 864 N.E.2d 1011 (Ind. 2007). "'A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.'" *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1016 (7th Cir. 2006) (quoting *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)) ("As we have held, 'reasonable avenues of investigation must be pursued' especially when, as here, it is unclear who committed the crime." (quoting *BeVier*, 806 F.2d at 128)); *see also Overton v. Hicks*, 1:06-cv-1513-DFH-JMS, 2008 WL 2518229, at *10 (S.D. Ind. June 17, 2008) (denying summary judgment on false arrest claim because a jury could find that the officer was aware of facts negating criminal intent, and "[t]hese new facts required [the officer] to reevaluate the reasonableness of his initial probable cause determination").

In viewing the facts in the light most favorable to D.F., the circumstances within Officer Lemon's knowledge were that D.F. was merely present in the hallway, that he briefly entered the bathroom during the attack, and that D.F. held out his arms as if to restrain a couple of the attackers. Thus, a reasonable jury could conclude that Officer Lemon lacked probable cause to arrest D.F. for any of the crimes eventually lodged against him. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 899 (7th Cir. 2001) ("A plaintiff could succeed on a

14

false arrest claim by demonstrating that he was arrested without probable cause (for example, by showing that the arresting officers ignored exculpatory information and arrested him with little or no basis for suspecting that he committed the crime) . . . ."); *Overton*, 2008 WL 2518229, at *10 ("Probable cause does not require the same type of evidence needed at trial to prove each element of the offense beyond a reasonable doubt . . . but probable cause does not exist without evidence that the defendant acted culpably." (citation omitted)). *See also Kamal v. Hopmayer*, No. 05 Cv. 8164(CLB), 2006 WL 3197161, at *3-4 (S.D.N.Y. Nov. 2, 2006) (denying summary judgment on student's false arrest claim because although the student was present during a rock-throwing incident, there was an issue of material fact regarding whether the officer knew that another student at the scene committed the offense); *Smith v. Underhill*, No. 03:05CV 0176 LRH LRL, 2006 WL 383519, at *8 (D. Nev. Feb. 17, 2006) (denying officer qualified immunity in false arrest case where student who was walking past a school fight was arrested, reasoning that "[b]eing arrested purely on the basis of reputation and proximity to a crime is a violation of [plaintiff's] well settled Fourth Amendment rights and can in no way be construed in a manner that would allow a reasonable officer to believe his actions lawful.").

Accordingly, the Defendants' motion for summary judgment as to the federal and state law claims of false arrest and false imprisonment against Officer Lemon will be DENIED.

### 2. *Qualified Immunity*

Officer Lemon further argues that summary judgment should be granted in his favor on Fitzpatrick's § 1983 claims of false imprisonment or false arrest because he is entitled to qualified immunity.

"The doctrine of qualified immunity shields from liability public officials who perform

discretionary duties." *Chelios*, 520 F.3d at 690-91. "Qualified immunity shields from liability police officers who act in ways they reasonably believe to be lawful." *Id*. (internal quotation marks and citation omitted). Thus, it "protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual." *Id*.

"The Supreme Court of the United States has articulated a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[5] "A plaintiff may discharge the burden of showing that the constitutional right was clearly established by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Id*. (citing *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001); *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999)).

As concluded *supra*, when taking the facts of this case in the light most favorable to Fitzpatrick, Officer Lemon arrested D.F. without probable cause. Given E.J's ostensibly exculpatory statement and the video footage revealing nothing more than D.F.'s presence during the attack, the case law would have put a reasonable police officer on notice that D.F. had a right to be free from detention and arrest. *See, e.g.*, *Ybarra*, 444 U.S. at 91 ("[M]ere propinquity to . . . criminal activity does not, without more, give rise to probable cause . . . ."); *BeVier*, 806 F.2d at

---

[5] Recently, in *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court reconsidered the two-step procedure set forth in *Saucier* and concluded that while the sequence is often appropriate, it should no longer be regarded as mandatory in all cases. It stated that the district courts should have the discretion to decide whether the two-step procedure is worthwhile in particular cases. *Id*.

128 ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest."); *Snodderly*, 239 F.3d at 899 (noting that a false arrest plaintiff could demonstrate lack of probable cause "by showing that the arresting officers ignored exculpatory information and arrested him with little or no basis for suspecting that he committed the crime . . . ."); *Irvin*, 913 F. Supp. at 1199 (denying officer qualified immunity in false arrest case where he detained all three boys on the scene of an incident even though witness only implicated one of them).[6] Consequently, summary judgment on the basis of qualified immunity is DENIED.

### *3. Defendant City's Liability for Officer Lemon's Torts*

The City moved for summary judgment concerning Fitzpatrick's § 1983 and state law claims under the doctrine of *respondeat superior*. (Defs.' Mem. in Supp. of Mot. For Summ. J. 14.) *See Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658 (1978). In his response brief, Fitzpatrick abandoned the § 1983 claim against the City, but maintained that the City is liable on the state law claims because of the actions of Officer Lemon. (Pl. Mem. in Supp. of Resp. Opposing Mot. for Summ. J. 14.)

"Under the doctrine of *respondeat superior*, an employer is liable for the acts of its employees which were committed within the course and scope of their employment." *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. App. 1999). The City contends that it is not

---

[6] Furthermore, the Defendants' claim of immunity under the Indiana Tort Claims Act ("ITCA") from the state law false imprisonment or false arrest claims is equally unavailing. The law enforcement immunity section of the ITCA, Ind. Code § 34-13-3-3, provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), *unless the act of enforcement constitutes false arrest or false imprisonment*." (emphasis added); *see also Row*, 864 N.E.2d at 1016 (noting that the ITCA does not extend to the torts of false arrest and false imprisonment). Therefore, the ITCA does not immunize the Defendants from the state law claims of false imprisonment or false arrest. Moreover, the Defendants apparently abandoned their argument for immunity on this basis, failing to address or defend it in their reply brief. (*See* Defs.' Reply in Supp. of Their Mot. for Summ. J. 8-9.)

liable for Officer Lemon's state law torts because the claims against Officer Lemon fail. (Defs.' Mem. in Supp. of Mot. For Summ. J. 16.) However, as discussed earlier, there is a genuine issue of material fact concerning whether Officer Lemon had probable cause to arrest D.F., and therefore the Indiana state law tort claims against the City under *respondeat superior* survive.

Consequently, summary judgment on the state law claim against the City is DENIED, but summary judgment on the § 1983 claim against the City is GRANTED.

### *4. Punitive Damages*

The Defendants further assert that summary judgment should be granted on Fitzpatrick's request for punitive damages. Fitzpatrick concedes that the City is immune from a claim for punitive damages, but maintains that Officer Lemon's liability for punitive damages is a matter for the trier of fact. (Pl. Mem. in Supp. of Resp. Opposing Mot. for Summ. J. 16.)

Punitive damages are available in § 1983 claims when the defendant's conduct was "motivated by evil intent or involv[ed] reckless or callous indifference to the federally-protected rights of others." *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (quoting *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989)). Regarding the issue of punitive damages, the Seventh Circuit Court of Appeals has noted that "[w]hile evaluations of motive and intent are generally inappropriate on a motion for summary judgment," there is "an exception to this rule where a plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of the defendant's actions." *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999) (citing *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986); *Sahagian v. Dickey*, 827 F.2d 90, 100 n.8 (7th Cir. 1987)); *see also Siebert*, 256 F.3d at 655 ("In the end, it will be for the jury to decide the proper quantum of

relief, if any, for [the defendant's] violation of the [plaintiff's] Fourth Amendment rights.").

Here, it is inappropriate to grant summary judgment on the claim of punitive damages. As discussed previously, there is a question of fact whether Officer Lemon arrested D.F. despite knowledge of exculpatory evidence and without probable cause. If true, a reasonable juror could conclude that Officer Lemon demonstrated a reckless or callous disregard of D.F.'s right to be free from unlawful detention. *See, e.g., Marshall ex rel Gossens v. Teske*, 284 F.3d 765, 772-73 (7th Cir. 2002) (affirming jury's award of punitive damages against officers who arrested minor without probable cause).

### 5. *The Section 1985 Claim*

Although Fitzpatrick initially brought a claim under 42 U.S.C. § 1985 against the Defendants for conspiracy to deny D.F.'s civil rights, Fitzpatrick indicated in his response brief that he is no longer pursuing that claim. (Pl. Mem. in Supp. of Resp. Opposing Mot. for Summ. J. 16.) Consequently, summary judgment will be GRANTED on the § 1985 claim.

## V. CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Defendants (Docket # 37) is GRANTED in part and DENIED in part in that all claims are dismissed except for the following, which survive:

1) The § 1983 and Indiana state law claims against Officer Lemon for false arrest and false imprisonment;

2) The Indiana state law claim against the City of Fort Wayne under the doctrine of *respondeat superior* for Officer Lemon's acts of false imprisonment and false arrest; and

19

3) The claim for punitive damages against Officer Lemon.

Furthermore, the Defendants' Motion to Strike (Docket # 42) is DENIED in part and deemed MOOT in part.

SO ORDERED.

Enter for March 19, 2009.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge