# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| JACK FITZPATRICK, individually and as Father and Legal and Natural Guardian of D.F. (a minor), )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF FORT WAYNE and OFFICER BOBBY LEMON, )<br><br>Defendants. ) | CASE NO. 1:07-cv-259 |

## OPINION AND ORDER

This matter is before the Court[1] on the motions in limine Plaintiff Jack Fitzpatrick and Defendants Officer Bobby Lemon and the City of Fort Wayne filed on June 17, 2009 (Docket ## 66, 67), and Defendants' supplemental motion in limine filed on June 26, 2009 (Docket # 75). Each party responded in opposition to the other's first motion in limine on June 24, 2009 (Docket ## 73, 74), and the Plaintiff filed a supplemental response brief on July 2, 2009 (Docket # 88). While the Defendants filed a reply on their first motion (Docket # 79), the Plaintiff did not.

For the reasons provided, Plaintiff's motion in limine (Docket # 66) will be GRANTED in part and DENIED in part. Defendants' first motion in limine (Docket # 67) will be GRANTED in part, DENIED in part, and TAKEN UNDER ADVISEMENT in part. Defendants' supplemental motion in limine (Docket # 75) will be GRANTED.[2]

_____

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] This Opinion and Order assumes the reader is familiar with the factual and legal background of this case.

# I. NATURE OF AN ORDER IN LIMINE

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion in limine is not a final ruling on the admissibility of the evidence which is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

# II. THE PLAINTIFF'S MOTION IN LIMINE

## A. Unopposed Portions of Plaintiff's Motion in Limine

Defendants did not respond to, and therefore apparently do not oppose, the following paragraphs of Plaintiff's motion in limine: Paragraph 2, pertaining to documents containing

narrative accounts of Fort Wayne Community School or Miami Middle School staff; Paragraph 3, pertaining to the Fort Wayne Police LAW incident table; Paragraph 7, pertaining to Fort Wayne Police Department Protocol for arrest, search, and seizure; Paragraph 11, pertaining to Concordia Lutheran School billing and payment records; Paragraph 12, pertaining to attorney fees; Paragraph 13, pertaining to previous civil claims that Fitzpatrick brought and to which he has been a party; Paragraph 14, pertaining to any settlement negotiations; Paragraph 15, pertaining to tax considerations; and Paragraph 16 (which is improperly labeled as 12 in the motion), pertaining to "send a message" arguments in opening or closing statements. Consequently, the Plaintiff's motion will be GRANTED as to this evidence.

### B. Narrative Report of Officer Bobby Lemon

The Plaintiff seeks to preclude any narrative reports that Officer Lemon produced regarding Daniel Fitzpatrick's arrest on November 4, 2005.[3] Plaintiff contends the reports are hearsay, and that they do not fall under Federal Rule of Evidence 803(8), the public records exception to the hearsay rule, because they are unreliable. (Pl.'s Mot. in Limine 1-2.) Defendants, however, contend that Officer Lemon's narrative report is admissible under the public records hearsay exception. (Defs.' Resp. Br. 1-2.) They also maintain that Officer Lemon may use the report under Federal Rule of Evidence 803(5) to refresh his recollection and read necessary parts of the report into evidence. (Defs.' Resp. Br. 2.)

At this juncture, Plaintiff's motion in limine (Docket # 66) is GRANTED. Presumably, the narrative reports may ultimately be admissible, at least in part, under Federal Rule of

---

[3] Ordinarily the name of a minor is to be redacted from court filings under Federal Rule of Civil Procedure 5.2(a), but leading up to the trial the Plaintiff has filed documents with Daniel's complete name, so the protection has been waived. Fed. R. Civ. P. 5.2(h).

Evidence 803(8), although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover, until the Defendants have laid a proper foundation, Officer Lemon may not read the document into evidence under Rule 803(5).

*C.  Daniel's School and Disciplinary Records*

Plaintiff seeks to exclude records of Daniel's school discipline record and records of his school performance, arguing that they are inadmissible under Federal Rule of Evidence 404(b) as an attempt to show bad character or tendency to commit a crime and that they are irrelevant to the issues in this case.  (Pl.'s Mot. in Limine 3-4.)  Plaintiff emphasizes that they are irrelevant to the issue of damages because Plaintiff is not seeking damages relating to the cost of switching to a new school or that the arrest had a negative impact on his school performance.  (Pl.'s Mot. in Limine 4.)  Moreover, the Plaintiff contends that these records were not listed as exhibits in Defendants' initial disclosures or in responses to interrogatories.  (Pl.'s Mot. in Limine 4.)

Defendants, however, maintain that the records are relevant to the issue of damages because they demonstrate that there are "alternative causes of [Daniel's] emotional distress". (Defs.' Resp. Br. 3.)  Defendants also believe that the evidence would show that because Daniel is apparently "no stranger to being suspended or disciplined at school," the arrest would not be as traumatic for him as it would be for a student who had never been suspended, disciplined, or removed from class.  (Defs.' Resp. Br. 4.)  The Defendants also contest the allegations that they did not disclose their intent to use these records, arguing that they were encompassed in the Rule

4

26(a)(1) initial disclosures, and that there would be no unfair surprise in using them.  (Defs.' Br. 4-5.)

The Court will grant the motion at this point because the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403.  Simply because Daniel had discipline problems at school does not mean that he suffered emotional distress to a lesser degree from his arrest.  After all, school suspensions or removals from class are on a completely different scale than being arrested by a police officer and subsequently incarcerated.  *Cf. Redmond v. City of Chicago*, No. 06 C 3611, 2008 WL 539164, at *2 (N.D. Ill. Feb. 26, 2008) (finding that plaintiff's other *arrests* were relevant to show that he would not be as traumatized as an individual who had never been arrested before).  Moreover, if the jury sees the details of Daniel's school performance and disciplinary issues, they may impermissibly attribute that prior history to Officer Lemon's probable cause determination.  Finally, the Court does not want to become bogged down with "trial[s] within a trial" over disciplinary events in Daniel's past.  *See, e.g., White v. Gerardot*, No. 1:05-CV-382, 2008 WL 4723998, at *2 (N.D. Ind. Oct. 24, 2008) (citing *Soller v. Moore*, 84 F.3d 964, 968 (7th Cir. 1996)); *see also* Fed. R. Evid. 403.  Of course, if the Plaintiff argues that Daniel's emotional distress subsequently affected his performance at school, then he will have opened the door for the admission of the records.

Accordingly, the Plaintiff's motion in limine will be GRANTED with respect to the school records, provided that Plaintiff does not open the door for its admittance.

*D.  Daniel's Prior or Subsequent Arrests or Adjudications as to Alleged Offenses Not Charged in Connection With His November 4, 2005, Arrest*

Plaintiff also seeks to exclude evidence regarding Daniel's prior criminal history, such as his arrest record, juvenile adjudications, and any other "bad acts" because they are irrelevant and inadmissible under Federal Rule of Evidence 404(b).  (Pl.'s Mot. in Limine 5.)  Defendants disagree, arguing that arrests or adjudications concerning crimes of dishonesty or false statements are relevant and admissible under Federal Rule of Evidence 609(a)(2).  (Defs.' Resp. Br. 6.)  They further contend that this evidence goes to show Daniel's bias towards police officers.  (Defs.'s Resp. Br. 6.)

Contrary to Defendants' position, juvenile adjudications are not admissible to attack the credibility of a witness under Federal Rule of Evidence 609(d).  *See, e.g., Blessing v. Kulak,* Nos. 86 C 10227, 86 C 10228, 1988 WL 67637, at *2 (N.D. Ill. June 22, 1988) ("As for the use of this evidence to demonstrate [plaintiff's] reputation was such that an arrest would not humiliate him or cause him mental anguish, this, too, is contrary to the Federal Rules of Evidence. . . .  The rules do not allow for impeachment of character through evidence of juvenile adjudications in civil proceedings.  The rules provide for use of such evidence only in excepted criminal cases." (citing Fed. R. Evid. 609(d))); *see also Plaza-Bonilla v. Cortazzo*, No. 07-2045, 2009 WL 977297, at *4 (E.D. Pa. Apr. 4, 2009) ("Defendants may not offer evidence of [Plaintiff's] juvenile adjudications under Fed. R. Evid. 609(d) for impeachment purposes.").

The Defendants argue that Daniel's arrest and juvenile adjudication records are also admissible to show his bias against police officers.  Although "Plaintiff's juvenile criminal history may be relevant to damages under Fed. R. Evid. 404(b), depending on Plaintiff's demands and proofs at trial[,]" *Plaza-Bonilla*, 2009 WL 977297, at *4, or to show bias, *see*

Charles Alan Wright, et al., 28 *Federal Practice and Procedure* § 6138 (noting that Rule 609(d) "does not address the admissibility of evidence offered to impeach by some other means, such as by showing contradiction or bias"), the Defendants have made no showing that those circumstances exist here. In fact, the Defendants have not demonstrated that Daniel would have a particular bias against Officer Lemon or even the Fort Wayne Police Department. *See, e.g., Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 853-55 (N.D. Ill. 2001) (finding that evidence of prior arrests were only slightly probative of bias, and excluding plaintiff's arrests because one was made by a different police department and the other did not involve the same officers in the case, and excluding the other witnesses' prior arrests because those arrests also did not involve officers in the case). The slight probative value, if any, of Daniel's potential bias against police officers in general as a result of his contacts with law enforcement is substantially outweighed by the risk of undue prejudice and confusion of the issues if his largely irrelevant criminal history is paraded before the jury. Fed. R. Evid. 403.

Consequently, Plaintiff's Motion in Limine will be GRANTED with respect to this evidence at this time.

### E. Daniel's Allen County Juvenile Justice Center Records

Plaintiff objects to the admission of Daniel's records from the Allen County Juvenile Justice Center because they contend the records contain inadmissible hearsay (Pl.'s Mot. in Limine 5), but have no objection if used to show the duration of his detention (Pl.'s Mot. in Limine 5-6). Defendants argue, however, that these records are admissible under Federal Rule of Evidence 803(6) as records of regularly conducted business. (Defs.' Resp. Br. 6-7.)

As with the narrative reports of Officer Lemon, these records will be excluded at this

time.  They may ultimately be admissible under Rule 803(6), as the Defendants propose, but the Court has not had the opportunity to review these records for imbedded hearsay statements, or to evaluate their probative value and prejudicial effect under Rule 403.  Accordingly, until the proper foundation is laid, the Plaintiff's motion will be GRANTED.

### F.  Testimony From the Other Students Arrested With Daniel

The Plaintiff seeks to exclude testimony from the other students arrested on November 4, 2005, because they were not disclosed in the Defendants' initial discovery disclosures or discovery responses, and because their testimony would be irrelevant since they provided no information to Officer Lemon at the time.  (Pl.'s Mot. in Limine 6-7.)

Defendants' response, however, is well-taken, as there appears to be no danger of unfair surprise given that they disclosed the names of the students in Disclosure A of their initial disclosures, and in their interrogatory responses with copies of Officer Lemon's narrative report identifying the students.  (Defs.' Resp. Br. 7.)  Moreover, as Defendants point out, Daniel knew the other witnesses.  (Defs.' Resp. Br. 8.)

In addition, this testimony is clearly relevant on the issue of probable cause, as these witnesses were present during Officer Lemon's investigation of the incident and therefore have personal knowledge of it.  Furthermore, the Plaintiff failed to identify any prejudicial effect that would outweigh the probative value of this evidence.  Fed. R. Evid. 403.  Consequently, the Plaintiff's motion with respect to this evidence will be DENIED.

### G.  Testimony of Witnesses John Wicker, Daniel Bickel, Suzanne Gamble, Cheryl Nietert, and Diane Lewis

Plaintiff opposes the admission of testimony from various Miami Middle School and Concordia Lutheran High School staff because these individuals were not listed in Defendants'

initial disclosures or discovery responses.  (Pl.'s Mot. in Limine 7.)  Plaintiff further argues that

their testimony is irrelevant to the issues in this case, particularly since Plaintiff is not seeking

damages pertaining to Daniel's performance at school or for the costs associated with his transfer

to another school.  (Pl.'s Mot. in Limine 7.)  The Plaintiff's motion with respect to this evidence

will be GRANTED in part and DENIED in part.

Defendants make no argument regarding the testimony of Suzanne Gamble and Diane

Lewis, and thus apparently do not oppose the Plaintiff's motion concerning their testimony.  (*See*

Defs.' Resp. Br. 8-9.)  Consequently, their testimony will be excluded.  However, the testimony

of John Weicker, Daniel Bickel, and Cheryl Nietert will not be excluded.

Defendants explain that they in fact disclosed the identity of John Weicker, Director of

Security for Fort Wayne Community Schools, in Officer Lemon's answer to Interrogatory No. 3

of the Plaintiff's first set of interrogatories.  (Defs.' Resp. Br. 8-9.)  And as the Defendants'

persuasively argue, his testimony is relevant because he has personal knowledge of the

November 4, 2005, attack on E.J. and presumably Officer Lemon's investigation of it.

Likewise, the testimony of Daniel Bickel, Fort Wayne Community Schools Area

Administrator, is admissible.  The Defendants appear to have disclosed Mr. Bickel, as they

explained that the Plaintiff included in his Rule 26(a)(1) initial disclosures an email sent from

Mr. Bickel to Mrs. Fitzpatrick, and the Defendants stated in their Rule 26(a)(1) initial disclosures

that their disclosures included all persons and documents identified in the Plaintiff's initial

disclosures.  (*See* Defs.' Resp. Br. 9.)  Moreover, his testimony is relevant because, like Mr.

Weicker, he has personal knowledge of the events of November 4, 2005.

Finally, Cheryl Nietert, the Guidance Assistant at Concordia Lutheran High School, will

not be precluded from testifying. The Defendants point out that like Mr. Bickel, Ms. Nietert was listed in the Plaintiff's initial disclosures, and moreover, the Defendants provided Plaintiff with Daniel's school records from Concordia which identify her. (Defs.' Resp. Br. 9.) As the Defendants posit, Ms. Nietert's testimony appears relevant to the issue of damages, going to Daniel's emotional distress. Consequently, Ms. Nietert's testimony will not be excluded.

The Plaintiff's motion with respect to the testimony of Ms. Gamble and Ms. Lewis is GRANTED, but it is DENIED as to the testimony of Mr. Weicker, Mr. Bickel, and Ms. Nietert.

### H. Daniel's Medical Records

The Plaintiff seeks to preclude the Defendants from introducing Daniel's medical records, again arguing that they were not properly disclosed and that they are irrelevant because the Plaintiff has not alleged physical injuries arising from the incident. (Pl.'s Mot. in Limine 8.) The Defendants argue that they disclosed the medical records on September 16, 2008, and attached a copy of a letter regarding their disclosure. (Defs.' Resp. Br. 10, Ex. I.) Moreover, Defendants contend that Daniel's medical records are relevant because he is alleging emotional distress.

The Court agrees with the Defendants that any medical records pertaining to any treatment for emotional distress is relevant and admissible to Daniel's claim of damages, but that claim does not, however, necessarily open the door for all of Daniel's medical records. Thus, even though the Plaintiff's motion with respect to this evidence will be DENIED, counsel are instructed to attempt to redact confidential and irrelevant information.

### III.  THE DEFENDANTS' MOTION IN LIMINE

#### A.  Unopposed Portions of Defendants' Motion in Limine

The Plaintiff does not oppose the following paragraphs of Defendants' motion in limine:

Paragraph 1, pertaining to citizen complaints, other criminal or civil actions, or discipline against

the Defendant Officer; Paragraph 2, References to Settlement Negotiations; Paragraph 3,

references to whether the City of Fort Wayne would likely be paying for any judgment against

the Defendant Officer; and Paragraph 5, Daniel Fitzpatrick's notes of events of November 4,

2005.  (Pl.'s Resp. to Defs.' Mot. in Limine ("Pl.'s Resp. Br.") 1.)  As a result, Defendants'

motion will be GRANTED with respect to this evidence.

#### B.  The Outcome of the Charges Against Daniel

The Defendants seek to exclude evidence of the disposition of the underlying charges

against Daniel, *i.e.*, that the prosecutor ultimately decided not to prosecute him and that the

charges were dismissed.  (Defs.' Mem. in Supp. of Mot. in Limine ("Defs.' Mem.") 3-4.)  The

Plaintiff objects, asserting that the disposition of Daniel's charges is relevant to the issue of

damages for a variety of reasons, including Daniel's alleged "factual innocence" and the

presumption that he therefore suffered even greater damages.  (Pl.'s Resp. Br. 1-2.)

As the Defendants correctly argue, the outcome of Daniel's juvenile case is not relevant

to the issue of whether Officer Lemon had probable cause to arrest him.  *See Ochana v. Flores*,

347 F.3d 266, 272 (7th Cir. 2003) ("It was not an abuse of discretion for the court to grant the

officers' motion in limine to bar . . . the disposition of the underlying criminal charges, because

these were not facts within the officers' knowledge at the time of the arrest . . . ."); *see also*

*Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990) ("[T]he mere fact that [plaintiff] was

acquitted of the crime for which he was initially arrested does not lead to section 1983 liability for the arresting officer. . . . [I]f the arrest was supported by probable cause, then no cause of action will lie."). The disposition of Daniel's juvenile charges will therefore be excluded.

Moreover, the probative value of this evidence is substantially outweighed by its prejudicial effect, since the jury may equate a dismissal of charges with a complete exoneration and impermissibly determine that therefore Officer Lemon had no probable cause to make the arrest. Fed. R. Evid. 403. This concern is heightened here because the Plaintiff suggests in his response brief that the dismissal establishes "factual innocence," but just because the prosecutor decided not to pursue the charges against Daniel does not necessarily mean that he was innocent, and could simply mean that there was insufficient evidence to convict. In short, the tenuous relevancy of this evidence does not outweigh the risk that it will confuse and mislead the jury and unduly prejudice the Defendants. *See* Fed. R. Evid. 403.

Accordingly, Defendants' motion in limine is GRANTED with respect to the evidence.

### C. *"Any Information That Was Not Disclosed Under Federal Rule of Civil Procedure 26(e)"*

The Defendants seek to exclude any information that they failed to provide pursuant to Rule 26(e), yet the Defendants point to no particular piece of evidence which they believe the Plaintiff will attempt to admit despite noncompliance with Rule 26. (Defs.' Mem. 5.) Consequently, the Defendants' motion with respect to this evidence will be DENIED at this time. However, the Defendants may renew their objection during trial if the issue arises, thus allowing the Court to review the admissibility of specific items.

### D. *Portions of Daniel's Testimony*

The Defendants assert that Daniel should be precluded from testifying about particular

topics because "the testimony is speculative, highly prejudicial, irrelevant, and constitutes inadmissible hearsay[,]" and "is not based on personal knowledge." (Defs.' Mem. 5.) The Court will address each objection in turn.

1. Statements that Mrs. Donald allegedly told Officer Lemon that Daniel had nothing to do with the attack

The Defendants want to preclude Daniel from testifying that Mrs. Donald, the assistant principal, allegedly told Officer Lemon that Daniel had nothing to do with the attack, on the basis that it is inadmissible hearsay. (Defs.' Mem. 5.) The Plaintiff counters that Daniel's testimony is admissible under Federal Rule of Evidence 801(d)(2)(A) as an admission by a party opponent, since Donald was formerly a party to this case. (Pl.'s Resp. Br. 3.) He further states that her testimony is admissible for the non-hearsay purpose of showing the effect on the listener. (Pl.'s Resp. Br. 3.)

Contrary to the Plaintiff's contentions, Donald's statement is not admissible under Rule 801(d)(2). To begin, "[u]nder Rule 801(d)(2)(A), a party's statement is admissible as non-hearsay only if it is offered against that party." *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000); *accord Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 335 (C.D. Cal. 2004); *see also Canter v. Hardy,* 188 F. Supp. 2d 773, 783 (E.D. Mich. 2002) (explaining that where an absent party's "out-of-court statement [was] offered not for the purpose of advancing claims against the absent party" but rather offered "against other parties in the case[,]" it is "highly doubtful" that the declarant's statement qualifies as one of a party-opponent, and emphasizing that "a party's own statement is admissible as non-hearsay *only if it is offered against that party*"). Furthermore, Donald was dismissed from this case, and therefore is no longer a party. *See, e.g., U.S. v. Smith*, 746 F.2d 1183, 1185 (6th Cir. 1984) ("[O]nce [declarant]

13

was severed from the case, he was no longer a party and the statement was no longer admissible under 801(d)(2)(A).").

Concerning the effect on the listener argument, or notice to Officer Lemon, the Court is confronted with two different versions. The Plaintiff first argued in his response brief that Donald told Daniel about what she said to Lemon (*see* Pl.'s Resp. Br. 3), but now, in a supplemental response brief, he argues that Daniel witnessed the actual conversation (Pl.'s Supplemental Resp. in Opposition to Defs.' Mot. in Limine 1-2). Since Daniel's affidavit is ambiguous on the point, the Court will set this for a Federal Rule of Evidence 104(a) hearing for July 6, 2009, at 10:00 a.m. to hear Daniel's testimony on the issue. The motion in limine is taken under advisement pending that hearing.

2.    Comments by Margaret Katter

The Defendants also seek to preclude Daniel from testifying about various comments Ms. Margaret Katter allegedly made to Daniel, apparently apologizing for the incident and commenting about how it was a mistake and mishandled. (Defs.' Mot. in Limine 5-6.) Defendants maintain that Daniel's testimony about Katter's remarks is irrelevant, highly prejudicial, and constitutes inadmissible hearsay. (Defs.' Mot. in Limine 6.) The Plaintiff posits that this evidence constitutes an admission by a party-opponent under Rule 801(d)(2)(a) (because Katter was originally a party in this case), and that these statements "are admissible to show the state of mind of a witness who, with Defendant Lemon, participated in the initial investigation of the school attack." (Pl.'s Resp. Br. 3.)

Because Daniel's testimony about Donald's statements failed to qualify as an admission, Katter's remarks likewise fail. Furthermore, Plaintiff's argument that the statements show

Katter's state of mind is also unpersuasive, as the Plaintiff has failed to explain how her state of mind is relevant to Officer Lemon's probable cause determination. Accordingly, the Defendants' motion will also be GRANTED with respect to this evidence.

3.      Pastor James Thomas's testimony

Defendants contend that Pastor James Thomas should not be able to testify about counseling Daniel after his arrest because Daniel stated in his deposition that he did speak to him about the November 4, 2005, incident, and therefore the testimony is inadmissible due to a lack of personal knowledge.

Daniel's lack of personal knowledge does not, however, make Pastor Thomas's testimony inadmissible. To begin, Daniel's deposition testimony that he did not speak to Pastor Thomas about the incident does not necessarily preclude the possibility that Daniel spoke to him about other relevant matters, such as his emotional distress. Furthermore, merely because Daniel may have forgotten about the conversation does not mean that Pastor Thomas has no personal knowledge of it.

It is possible, however, that Daniel's deposition testimony may have misled the Defendants to believe that there was no need to depose Pastor Thomas. Thus, even though the Defendants' motion will be DENIED, the Court will allow the Defendants the opportunity to briefly depose Pastor Thomas outside the presence of the jury and on the record prior to his testifying.

4.      Daniel's testimony that he was incarcerated for four days for "something he didn't do"

Defendants seek to preclude Daniel from testifying that he was incarcerated for four days for "something he didn't do." While Daniel may testify as to the length of his detention, as it is

15

relevant to the issue of damages, he will be precluded from testifying about his factual innocence, for the reasons articulated in our ruling in Section III B (regarding the disposition of his criminal case), including characterizing the incident as "something [he] didn't do." Daniel is not precluded from testifying, however, that his emotional distress was heightened or stemmed from being arrested and detained for something he believes he did not do.[4] Accordingly, and so limited, Defendants' motion will be GRANTED with respect to this evidence.

     5.    <u>Daniel's testimony concerning his belief that Officer Lemon could not have concluded that he did anything wrong</u>

Defendants seek to exclude testimony from Daniel that Officer Lemon could not have believed that he did anything wrong. This testimony will be excluded because, as the Defendants correctly argue, this testimony is speculative as to what Officer Lemon knew when making his probable cause determination. Accordingly, Defendants' motion will be GRANTED with respect to this evidence.

### *E. Portions of Jack Fitzpatrick's Testimony*

The Defendants seek to preclude Plaintiff Jack Fitzpatrick, Daniel's father, from testifying about the following particular items.

     1.    <u>Portions of Defendants' Motion to which the Plaintiff does not object</u>

Because the Plaintiff does not object to their exclusion, the Defendants' Motion in Limine will be GRANTED with respect to the following testimony from Mr. Fitzpatrick: testimony about what E.J., the victim of the attack, said he told school staff about Daniel's innocence; testimony about the state court judge's comments during the juvenile hearing; and

---

[4] Since Daniel apparently did not maintain his innocence when confronted by Officer Lemon, this testimony about his alleged innocence would be the subject of a limiting instruction informing the jury that the testimony only goes to the issue of damages and not to the issue of liability, *i.e.*, probable cause for his arrest.

testimony about E.J.'s comments to Mr. Fitzpatrick that Daniel had nothing to do with the attack.

      2.      <u>Jack Fitzpatrick's testimony about the events of November 4, 2005</u>

The Defendants wish to preclude Mr. Fitzpatrick from testifying about the events of November 4, 2005, on the basis that he has no personal knowledge of the incident, and that anything he heard about it constitutes inadmissible hearsay and is irrelevant to what Officer Lemon knew at the time of the arrest. (Defs.' Mem. 7.) The Plaintiff, however, contends that Mr. Fitzpatrick should be allowed to testify about the events of that day, including information he heard from others, particularly from school staff and Officer Lemon himself. (Pl.'s Resp. Br. 5.)

At this juncture, the Defendants' motion will be DENIED. Mr. Fitzpatrick would presumably have some personal knowledge of some of the events of November 4, 2005, such as his own conversations with Daniel, Officer Lemon, and others. Of course, some of these statements may be hearsay and inadmissible, but without a specific example of the testimony, the Court cannot make that determination. The Court may reconsider this ruling in the context of the trial.

      3.      <u>Jack Fitzpatrick's testimony about what Mrs. Donald said</u>

The Defendants contend that Mr. Fitzpatrick should be not be allowed to testify that either Donald or Katter (or perhaps both) said that Daniel was "arrested for his safety", arguing that such testimony is irrelevant, speculative, constitutes inadmissible hearsay, and is highly prejudicial. (Defs.' Mem. 7.) Plaintiff again claims that this testimony is admissible because it is an admission by a party-opponent and it is relevant because these individuals had knowledge of the reasons for Daniel's arrest. (Pl.'s Resp. Br. 6.)

Mr. Fitzpatrick will be precluded from giving this testimony because it is inadmissible hearsay.  As explained in Sections III D 1 and 2, Donald and Katter's statements do not qualify as admissions under Rule 801(d)(2).  Accordingly, the Defendants' motion to exclude Mr. Fitzpatrick's testimony about what he alleges Donald or Katter said is also GRANTED.

*F.  Daniel's Affidavit*

The Defendants contend that some of the testimony from Daniel's affidavit is inadmissible at trial.  (Defs.' Mem. 8-11.)  Although the Plaintiff does not intend to introduce Daniel's affidavit at trial, they may seek to introduce some of the facts and statements reflected in the affidavit through his in-court testimony.  (Pl.'s Resp. Br. 6.)  The Court will address each of the paragraphs that the Defendants objected to in turn.

1.      Paragraphs 5 and 10

The Defendants contend that Daniel should not be permitted to testify as to paragraph 5 of his affidavit, which reads,

> I didn't try to stop the attack when I saw the boys kicking E.J. on the floor, but I didn't do anything to hurt or touch E.J. either.  My friend Dedrian also was there and did nothing to touch or hurt E.J.  I didn't yell or try to pull the group off of E.J., because I was scared.

(Daniel Aff. ¶ 5.)

The Defendants likewise object to Daniel's statements in paragraph 10: "I never did anything to hurt the boy who was attacked in the bathroom.  The boy, E.J., was a friend of mine, and still is a friend of mine."  The Defendants assert that these statements are irrelevant because Daniel did not report this information to Officer Lemon, and therefore it was not within the officer's knowledge at the time of the arrest.

The Plaintiff counters that evidence of Daniel's innocence is relevant to show "that

simple suspicion of a[n] individual's guilt due to [his] presence at the scene of criminal activity is not the same as having the facts needed to create probable cause to arrest[,]" and that it illustrates the importance of the probable cause determination.  (Pl.'s Resp. Br. 7.)  The Plaintiff further contends that Daniel's statement that he was scared during the attack is relevant to show that Officer Lemon was unreasonable in interrogating the boys in a group rather than individually.  (Pl.'s Resp. Br. 7.)

Daniel will be precluded from testifying about the information contained in paragraphs 5 and 10 of his affidavit.  The testimony is irrelevant to the issue of probable cause because it was not within Officer Lemon's personal knowledge when he made the arrest.  Furthermore, as discussed *supra*, the Plaintiff is not permitted to litigate Daniel's factual innocence because the probative value of such evidence is limited, while the prejudicial effect and risk of confusing the jury are great.  *See* Fed. R. Evid. 403.  Consequently, Defendants' motion with respect to this evidence will be GRANTED.

2.    Paragraph 9

The Defendants maintain that Daniel should not be permitted to testify about the second sentence of paragraph nine, which reads, "Before I was arrested, [Assistant Principal Kathy Donald] told [Officer Lemon] that I didn't do anything."  (Defs.' Mem. 10.)  Defendants argue that this statement is hearsay.  (Defs.' Mem. 10.)  The Plaintiff, however, asserts that the statement is admissible "for the non-hearsay purpose of showing the information Defendant Lemon was provided prior to arresting Plaintiff."  (Pl.'s Resp. Br. 8.)

Consistent with Section III D 1, this matter is taken under advisement pending the July 6, 2009, hearing.

3.      Paragraphs 11 and 13

The Defendants seek to omit Daniel's testimony from paragraph 11 that "all of these charges were later dismissed." (Defs.' Mem. 10.) For the reasons articulated in Section III B, the disposition of Daniel's charges is inadmissible. Consequently, the Defendants' motion is GRANTED with respect to this evidence.

The Defendants also seek to strike Daniel's testimony in paragraph 13:

When I was falsely accused of helping to attack my friend, and wrongfully arrested and incarcerated, then later kept on home detention, it affected me by making me feel mad, scared, and all shook up.

(Defs.' Mem. 10.) Defendants maintain these statements contain inadmissible legal conclusions and irrelevant statements. (Defs.' Mem. 11.)

The Plaintiff, however, contends there are no legal conclusions in this statement, but rather that Daniel "was factually innocent, and he should not have been arrested, because he is innocent." (Pl.'s Resp. Br. 8.) Moreover, Plaintiff believes that Daniel's description of his emotional reaction to his arrest and incarceration is relevant to the issue of damages. (Pl.'s Resp. Br. 8.)

Daniel may testify to the affect the arrest had on him, given his belief in his innocence, since that information is relevant to the cause or extent of his emotional distress. *See* Section III D 4. However, in line with our previous rulings, testimony that Daniel was factually innocent is inadmissible. Defendants' motion, as so limited, *see* note 4 *supra*, with respect to this evidence will therefore be GRANTED in part and DENIED in part.

### G. Affidavit of Jack Fitzpatrick

The Defendants object to Mr. Fitzpatrick's testimony regarding paragraphs 4, 5, 6, 7, and

8 of his affidavit.[5]

1.  Paragraph 4

The Defendants seek to exclude the following testimony from Mr. Fitzpatrick: "To my knowledge, the boys got along fine, and had not been in any conflicts with one another during the period leading up to the incident in which several students attacked E.J., at school." (Defs.' Mem. 11.) The Defendants' objection is well-taken because the statement is made without personal knowledge. Although Mr. Fitzpatrick may have some general knowledge about the history of the boys' friendship, there is no showing that this statement was based on personal knowledge, and besides, he was not present at school the day of the incident and could not know if there were conflicts between the boys at that time. Consequently, the Defendants' motion with respect to this evidence is GRANTED.

2.  Paragraph 5

Defendants object to the information contained in paragraph 5 of Mr. Fitzpatrick's affidavit, which reads:

> When my son Daniel, was arrested, he was placed in the Wood Youth/Allen County Juvenile Detention Center for about (4) days, and then he was placed on home detention for about four (4) additional days. All of the charges eventually were dismissed, and Daniel, was never expelled from school, although the other boys that were arrested with him were expelled.

(Defs.' Mem. 11-12, citing Jack Fitzpatrick Aff. ¶ 4.) The Defendants' motion as to paragraph 5 will be GRANTED in part and DENIED in part.

The Plaintiff does not object to excluding statements about the expulsions of Daniel's fellow students. Consequently, Defendants' motion will be GRANTED with respect to that

---

[5] The rulings on this section apply equally to testimony from Carol Fitzpatrick.

portion of paragraph 5. Likewise, the portion of the paragraph indicating that Daniel was not expelled will also be excluded, because this information is irrelevant; it does not pertain to Officer Lemon's probable cause determination, and it does nothing to advance the Plaintiff's arguments about damages. Consistent with the earlier ruling, the disposition of the juvenile charges are also excluded. Thus, Defendants' motion will also be GRANTED with respect to the portion of paragraph five relating to the expulsions or non-expulsions of Daniel and the students arrested with him, and the part regarding the disposition of Daniel's charges.[6]

However, the remainder of paragraph 5 is admissible. Information about the length of Daniel's detention is relevant to the issue of damages. Therefore, the Defendants' motion will be DENIED as to the portion of the paragraph describing Daniel's detention.

3.  Paragraph 6

Although the Defendants cursorily indicate that they object to paragraph 6, they offer no argument on the issue. (*See* Defs.' Mem. 11-12.) Paragraph six states, "Following Daniel, [sic] wrongful arrest and detention, I saw his behavior change in the following ways: he was uncharacteristically anxious and his grades fell." (Jack Fitzpatrick Aff. ¶ 6.) The Defendants' motion will be GRANTED in part and DENIED in part with respect to this evidence. Mr.

---

[6] The Defendants' supplemental motion in limine (Docket # 75) contains a similar objection; the Defendants seek to preclude the Plaintiff from introducing any information relating to the expulsion or non-expulsion of Daniel and the other students who were in the bathroom during the November 4, 2005, attack on E.J. The Plaintiff objected to the supplemental motion, arguing that if the Defendants intend to use these students as witnesses, then the Plaintiff should have the opportunity to cross-examine them for bias. (Pl.'s Resp. Br. to Defs.' Supplemental Mot. in Limine 1.) The Plaintiffs believe that these witnesses will be biased against Daniel essentially because they were expelled and he was not. (Pl.'s Resp. Br. to Defs.' Supplemental Mot. in Limine 1-2.)

Based on our analysis above, the Defendants' supplemental motion will be GRANTED with respect to this evidence. The threat of bias against Daniel, solely because he was not expelled, seems tenuous, while the possibility of prejudice and confusion of the issues is real, as the jury could assume that because the school took no action to expel Daniel, he must be innocent and that therefore Officer Lemon had no basis to arrest him. Fed. R. Evid. 403. For the reasons articulate above, any testimony concerning the expulsions or non-expulsions of the arrested students and Daniel will be excluded.

Fitzpatrick's observations about Daniel's demeanor would be relevant to the issue of damages, and therefore he will not be precluded from testifying that his son was "uncharacteristically anxious." However, Mr. Fitzpatrick will be precluded from testifying that Daniel's grades fell, since he apparently does not intend to introduce evidence that Daniel's performance at school suffered after the arrest. (*See* Pl.'s Mot. 4.) Therefore, for the reasons discussed in Section II C above, Mr. Fitzpatrick's testimony that Daniel's "grades fell" will be excluded.

        4.      <u>Paragraphs 7 and 8</u>

The Plaintiff does not challenge Defendants' objections to paragraphs 7 and 8, and therefore the Defendants's motion will be GRANTED with respect to this evidence.

### *H. Affidavit of E.J.*

The Defendants object to paragraphs 3 and 5 of E.J.'s affidavit. Defendants motion will be GRANTED in part and DENIED in part.

        1.      <u>Paragraph 3</u>

Defendants object to E.J.'s statement that he saw Daniel with his arms out "as if trying to hold them away from me." (Defs.' Mem. 12.) Consistent our reasoning on the Defendants' previous motion to strike, the Defendants' motion in limine will be DENIED with respect to this evidence. (*See* March 19, 2009, Op. and Or. 4-5.)

        2.      <u>Paragraph 5</u>

The Defendants also object to paragraph 5 of E.J.'s affidavit, which explains that he and Daniel are best friends. (Defs.' Mem. 12.) The Plaintiff contends that this information is relevant and admissible because "it shows that there was no motive on the part of Daniel to attack Elbert" contrary to the charges Officer Lemon brought against him. Because this

testimony is irrelevant to Officer Lemon's probable cause determination, it will be excluded.

The Defendants' motion will therefore be GRANTED with respect to this evidence until the

Plaintiff lays a foundation that these facts were conveyed to Officer Lemon before the arrest.

### I. Affidavit of Elbert Johnson, Sr.

The Defendants object to admitting into evidence paragraphs 4, 6, and 7 of Elbert

Johnson, Sr.'s affidavit.

1. <u>Paragraph 4</u>

The Defendants object to Mr. Johnson's statement that EJ "told [him] that Daniel was not

one of the attackers." (Defs.' Mem. 12.) Again, because there is no foundation that this

information was shared with Officer Lemon when making his probable cause determination, it is

irrelevant and will be excluded. Defendants' motion is therefore GRANTED with respect to this

statement in paragraph 4 of Mr. Johnson's affidavit.

2. <u>Paragraph 6</u>

The Defendants object to paragraph 6 of Mr. Johnson's affidavit, which states:

> I also talked to Officer Lemon that evening, and asked him why he took TJ and
> Daniel Fitzpatrick to [the juvenile detention center], when TJ and Daniel
> Fitzpatrick had not been attackers. I told him that Ms. Katter said that TJ and
> Daniel had been arrested for their "safety." Officer Lemon told me that he did not
> agree with the procedures at the school.

(Elbert Johnson, Sr., Aff. ¶ 6.) Defendants contend that this information is irrelevant to the issue

of probable cause because it was not known to Officer Lemon at the time he arrested Daniel.

(Defs.' Mem. 13-14.) *See Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact

that an officer later discovers additional evidence unknown to her at the time of the arrest, even

if it tends to negate probable cause, is irrelevant – we only care about what the officer knew at

the time the decision was made.").

The Plaintiff contends that this information is relevant because it pertains to the reason why Daniel was arrested – not because there was probable cause that he committed a crime, but rather that he was arrested for his safety. (Pl.'s Resp. Br. 11.) In the Plaintiff's view, Officer Lemon's response that he disagreed with the school's procedures amounts to an admission of a party-opponent under Federal Rule of Evidence 801(d)(2) that he arrested Daniel for other reasons.

Although Officer Lemon's highly ambiguous response to Mr. Johnson's question could arguably be perceived as an admission by a party-opponent, it only rises to that status if the hearsay statement of Katter (contained within the hearsay statement of Mr. Johnson) is considered. The problem with considering Katter's supposed statement is that it is highly prejudicial, since it implies an impermissible reason for his arrest, other than probable cause to believe that he had committed an offense. Therefore, Officer Lemon's remark has only slight probative value, and then only if it is read in conjunction with Katter's statement, but the prejudicial effect of Katter's statement (which otherwise would not be admissible) dictates that neither comment should be admitted. Fed. R. Evid. 403. Accordingly, the Defendants' motion with respect to paragraph 6 will be GRANTED.[7]

---

[7] The Defendants also filed a supplemental motion in limine seeking to bar Mr. Johnson's January 25, 2006, witness statement. At this time, the Court has not seen the witness statement, but from what the supplemental motion in limine indicates, the witness statement pertains to the very same conversation between Mr. Johnson and Officer Lemon. Therefore, the same analysis in our ruling above will apply to the witness statement. Accordingly, at this juncture, the Defendants' supplemental motion (Docket # 75) is GRANTED with respect to this evidence until such time as a proper foundation is laid for its admission.

3.      Paragraph 7

The Defendants object to paragraph 7 of Mr. Johnson's affidavit, which essentially states what he knows about Daniel's and E.J.'s friendship.  (Defs.' Mem. ¶ 13.)  For the same reasons we excluded Mr. Fitzpatrick's similar statement in paragraph 4 of his affidavit (*see supra* Section III G 1), paragraph 7 of Mr. Johnson's affidavit will be excluded.  Defendants' motion with respect to this evidence will be GRANTED.

## *J.  A.C. Eldridge's Testimony*

The Defendants wish to exclude testimony from teacher A.C. Eldridge about his conversation with Daniel following the attack on E.J., specifically Plaintiff's indication that "witness Eldridge will testify to receiving information from Plaintiff regarding the bathroom attack, and what information Mr. Eldridge passed on to the school administrators that talked with Lemon about the attack."  (Defs.' Mem. 14 (quoting Pl.'s Tr. Br.).)  Defendants contend that this testimony is hearsay and that there is no foundation that Mr. Eldridge has personal knowledge of the school administrators' conversations with Officer Lemon.  Because there is no evidence this information was passed along to Officer Lemon, Defendants contend that it is irrelevant.  Finally, the Defendants contend that the Plaintiff did not disclose the use of this testimony in their initial disclosures or discovery responses.  (Defs.' Mem. 14.)

The Plaintiff contends that this information is non-hearsay because it shows what information Daniel provided about the attack.  (Pl.'s Resp. Br. 12.)  They also argue that "it puts into context events leading up to the decision to interrogate Daniel along with the rest of the students at the scene of the attack[,]" and contrasts Daniel's response when interrogated when among the other students with his response when questioned alone.  (Pl.'s Resp. Br. 12.)

Plaintiff contends that this information should be used for impeachment purposes, since the school staff witnesses deny having or providing exculpatory information to Officer Lemon. (Pl.'s Resp. Br. 12.)

At this time, Defendants' motion will be GRANTED with respect to this evidence. There is no foundation that this information was communicated to Officer Lemon, or that Eldridge has personal knowledge of the school administrators' conversations with Officer Lemon. This testimony is therefore irrelevant to the issue of probable cause. Moreover, Plaintiff made no effort to contradict Defendants' assertion that this information was disclosed as required under Federal Rule of Civil Procedure 26. Eldridge's testimony will consequently be excluded.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion in limine (Docket # 66) is GRANTED in part and DENIED in part. Defendants' motion in limine (Docket # 67) is GRANTED in part, DENIED in part, and TAKEN UNDER ADVISEMENT in part. Defendants supplemental motion in limine (Docket # 75) is GRANTED. The matters taken under advisement are set for a Federal Rule of Evidence 104(a) hearing on July 6, 2009, at 10:00 a.m.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution

each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for July 2, 2009.

 S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge