UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JACK FITZPATRICK, individually and as father and legal and natural guardian of D.F., a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:07-cv-259 |
| CITY OF FORT WAYNE and OFFICER BOBBY LEMON, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Jack Fitzpatrick maintains in his timely Motion for New Trial (Docket # 130) under Federal Rule of Civil Procedure 59, that the Court erred when it refused to give three of his proposed jury instructions. Defendants City of Fort Wayne and Fort Wayne Police Officer Bobby Lemon (referred to here as simply "Lemon") filed a response (Docket # 133), and Fitzpatrick submitted a reply (Docket # 134). After the filing of a partial transcript of the trial (Docket # 139), the parties submitted further briefing. (Docket # 141, 142.)

Because the jury was adequately informed of the issues and the law by the twenty-nine instructions that were given, Fitzpatrick's motion will be DENIED.

**I. BACKGROUND**

On November 4, 2005, a hallway security camera at Miami Middle School in Fort Wayne, Indiana, captured a group of middle school boys dragging another student, E.J., from the hallway into a restroom, where he was severely beaten by several boys. (Tr. 26, 91.) The scene in the hallway, the only part visible to the camera, shows Fitzpatrick's son, D.F., quickly follow the group into the restroom, though he does not appear to touch E.J. (Tr. 26, 29, 55, 95-96.)

After a brief interval, the video then shows D.F. running out of the restroom along with one of the other boys, soon followed by the rest. (Tr. 26, 92, 96.) D.F. then went to class and informed no one of the attack. (Tr. 99.)

E.J. was soon found injured on the restroom floor, leading the school's administrators to commence an investigation. (Tr. 90.) Someone promptly called Lemon, the school's resource officer, at his office in another school. (Tr. 46-47, 90.) D.F. was eventually summoned to the office, along with eight other boys appearing in the video, all of whom were present during the attack. (Tr. 14-16, 49.) The administrators started the questioning (Tr. 49), but eventually Lemon arrived and also questioned the boys (Tr. 16). At times, Lemon would leave the room, apparently to watch the video (Tr. 50), and the boys would remain with the school officials. (Tr. 18-19.) Lemon also apparently spoke to E.J., but E.J. either could not, or would not, identify his assailants. (Tr. 56.)

According to D.F's testimony, all the boys professed their innocence when questioned. (Tr. 16-17.) Lemon, on the other hand, testified that the boys said nothing about what happened. (Tr. 96-97.) After viewing the video, which confirmed that all the boys had been in the restroom at the time E.J. was beaten, Lemon arrested everyone for misdemeanor battery. (Tr. 98-99.) Concerning D.F. in particular, Lemon based probable cause to arrest on the video, which showed D.F. running into the restroom at the time E.J. was pulled in by the others and then running out again. (Tr. 96, 98-99.) Lemon also noted that D.F. never helped E.J., or sought help, and merely left him on the restroom floor. (Tr. 113-14.)

Fitzpatrick filed suit under 42 U.S.C. § 1983 on behalf of his son, alleging that Lemon did not have probable cause to arrest D.F., and that the resulting false arrest violated the Fourth

2

Amendment. (Docket # 1.)  The City of Fort Wayne as Lemon's employer was also sued for false arrest under the tort laws of the state of Indiana. (Docket # 1.)

Following a two-day jury trial, in which the video was the featured exhibit, a verdict was returned in favor of Defendants, and a judgment followed. (Docket # 124, 126, 128, 129.) Fitzpatrick now moves for a new trial under Federal Rule of Civil Procedure 59(a)(1)(A), contending that the Court erred when it refused to give three of his proposed jury instructions, Nos. 2, 3, and 22, all of which seek to add refinements to the concept of probable cause. (Docket # 130.)

Lemon opposes the motion, arguing that the Court properly declined to give the proposed instructions because the instructions actually given faithfully followed the Seventh Circuit Court of Appeal's pattern instructions on the issue of probable cause. (Docket # 133.)  After reviewing the applicable standard, the Court will address each instruction in turn.

## II.  STANDARD OF LAW FOR A MOTION FOR NEW TRIAL

A succinct expression of the test on a motion for a new trial is whether, when the jury instructions are considered in their entirety, "the jury was misled in any way and whether [they] had an understanding of the issues." *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 438 (7th Cir. 2009) (citing *Russell v. Nat'l R.R. Passenger Corp.*, 189 F.3d 590, 593 (7th Cir. 1999)).  Another way to put it, is whether the instructions given as a whole were sufficient to correctly inform the jury of the applicable law or did they so misguide the jury that Fitzpatrick was prejudiced. *Hollins v. City of Milwaukee*, 574 F.3d 822, 829 (7th Cir. 2009) (citing *Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir. 2007)).

Notably, Fitzpatrick does not contest the twenty-nine jury instructions that were given to

the jury, so he is left to argue that without the three tendered instructions, the jury was insufficiently informed of the issues, or were misled, and that ultimately he was prejudiced.

### III. DISCUSSION

*A. Proposed Jury Instruction No. 2*

Fitzpatrick contends that the Court erred by refusing to give his Proposed Final Jury Instruction No. 2, as follows:

> The Fifth Amendment's self incrimination clause provides a citizen with a right not to act as a witness against themself [sic]. Exercise of one's right to remain silent during a custodial interrogation, furthermore, cannot be used as a basis of probable cause for arrest.

(Pl.'s Mem. in Supp. of Mot. for New Trial ("Pl.'s Mem.") Ex. A.) He argues that D.F. was subjected to a custodial interrogation by Lemon, and therefore the jury should have been told that D.F.'s lack of a response, consistent with his right not to incriminate himself under the Fifth Amendment, was not a proper factor to consider when calculating probable cause for an arrest. Lemon asserts, however, that D.F. was not in police custody at the time, and besides, his testimony catalogued the factors he considered in determining probable cause (*e.g.*, the surveillance video; Trial Tr. 26:19-20, 98-99, and 113; and other factors), and he did not consider D.F.'s non-responsiveness to questioning. (Defs.'s Resp. to the Pls.' Mot. for New Trial ("Resp. Br.") 2-4.)

An initial problem with the proposed instruction is that it merely assumes, and thus would have the jury assume, that D.F. was undergoing a "custodial interrogation" when Lemon and the school administrators were investigating E.J.'s beating. The point is potentially misleading.

A suspect is in custody if he is restrained to a degree associated with a formal arrest.

4

*United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002). The inquiry is objective, and the court looks to the totality of the circumstances when considering whether a reasonable person would have believed that he was free to end the conversation or leave. *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006) (citing *United States v. Lennick*, 917 F.2d 974, 977 (7th Cir. 1990)). Factors in evaluating the totality of circumstances include whether the authorities: (1) exerted control over the environment; (2) engaged in prolonged, coercive, and accusatory questioning; (3) used subterfuge to induce self-incrimination; (4) physically restrained or otherwise significantly curtailed the suspect's freedom of movement; or (5) whether, and to what extent, the suspect was led to reasonably believe that he could interrupt the questioning. *Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996); *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

The record does not support the notion that D.F. was exposed to a prolonged, coercive, or accusatory questioning by Lemon; rather, the brief questioning was seemingly focused on simply, "what happened?" (Tr. 16-17, 96-97.) There is also nothing in the record suggesting the use of subterfuge by Lemon or the use of restraints, and while the boys had been summoned to the office and placed in a conference room, that had been at the direction of the school administrators and occurred before Lemon's arrival. Finally, while D.F. maintains that he did not feel he had the freedom to leave, he does not know why he felt that way. (Tr. 17.) Overall, the record does not suggest a coercive, custodial atmosphere, but rather a brief detention of a "comparatively nonthreatening character." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

In fact, Lemon's investigation was more in the nature of a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968). In *Terry*, the Supreme Court recognized that an officer's reasonable suspicion

that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further. *Hibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, 542 U.S. 177 (2004). Of course, by this time, Lemon knew to a certainty that a serious battery had occurred, and he also knew that D.F. had been present. This gave him at least, as he testified, a reasonable suspicion under *Terry* that D.F. had been a participant. (Tr. 115-16). Consistent with that view, Lemon's brief questioning of the boys focused exclusively on "what happened."

So, while counsel spend considerable time in their post-trial briefs arguing about whether D.F. was in custody, it is a meaningless point. For our purposes here, D.F.'s right to remain silent under the Fifth Amendment applied whether he was in custody or, we can assume, merely undergoing a *Terry*-type investigation. *Cf. Hibel*, 542 U.S. at 177-78.

This brings the analysis to the principal thrust of Fitzpatrick's instruction, the incorrect legal proposition that Lemon could not consider D.F.'s silence in response to questioning as a basis for determining probable cause to arrest. Indeed, contrary to Fitzpatrick's instruction, and consistent with the Court's instruction on probable cause, Lemon was entitled to consider what he knew–that D.F. and the other boys had not been responsive to his simple questions. (*See* Ct.'s Final Jury Instruction No. 14 ("In making this decision, you should consider what Officer Lemon knew and what reasonably trustworthy information Officer Lemon had received.").)

Stated simply, probable cause deals with probabilities and depends on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). In that regard, the "better view is that refusal to answer is one factor which an officer may consider together with the evidence that gave rise to his prior suspicion, in

6

determining whether there are grounds for an arrest." WAYNE R. LAFAVE, 2 CRIMINAL PROCEDURE § 3.3(f).

Accordingly, Fitzpatrick's proposed instruction is an incorrect statement of the law, as it would purport to make impermissible a factor that a police officer can actually consider when determining probable cause. Therefore, if the jury believed that Lemon did in fact consider D.F.'s non-responsive answers in determining probable cause, something he actually denies, they could have been misled by this instruction, and thus it was not error to reject it.

*Pringle*, 540 U.S. 366, actually illustrates the point. There, officers pulled over a small car for speeding. *Id*. at 368. An officer observed a large roll of money in the car's glove compartment. *Id*. The officer obtained consent to search the car and found five baggies of cocaine in the backseat armrest. *Id*. The officer then questioned all three men about the ownership of the drugs and money, telling them that if no one admitted to ownership of the drugs he was going to arrest them all. *Id*. When no one offered information regarding the ownership of the drugs or money, all three were placed under arrest and transported to the police station. *Id*. Based on these facts, a unanimous Supreme Court determined that a reasonable police officer had probable cause to arrest all three and that there was no violation of the Fourth Amendment. *Id*. at 372. In a large sense, this case channels the situation in *Pringle*, a case that demonstrates that Lemon would have been entitled to consider the non-responsiveness of the boys in determining whether he had probable cause to arrest them.

Moreover, the instruction was also an impermissible comment on the evidence as it would direct the jury to the conclusion, a point actually disputed, that D.R. was truly silent. However, if D.F. is to be believed, he was not silent at all, but rather was openly expressing his

innocence. (Tr. 16:24-25, 17:15-17, 19:18-20.); *see Jaffee v. Redmond*, 51 F. 3d 1346, 1353 (7th Cir. 1995) (stating that jury instructions must be correct statements of the law supported by the evidence).

Ultimately, the jury was fully instructed concerning all the elements of the false arrest claim utilizing the Seventh Circuit's pattern instructions as well as the elements of the underlying state law battery offense. As a result, Fitzpatrick has failed to show that the jury was misled, or that he was prejudiced, *Hollins*, 574 F.3d at 829, by the refusal to give his Instruction No. 2.

### B. Proposed Jury Instruction No. 3

Fitzpatrick next asserts that the Court erred when it refused to give his Proposed Final Jury Instruction No. 3:

> An officer must consider the totality of the evidence known to them [sic] when considering probable cause for an arrest, and where there is inculpatory and exculpatory evidence, the officer cannot ignore exculpatory evidence in order to find probable cause.

(Pl.'s Mem. Ex. B.) Fitzpatrick argues that the instruction is proper because the video shows D.F. as a mere onlooker, and exculpating in that it shows him entering the restroom after E.J. had been dragged in and leaving before most of the others. Thus, the theory is that because Lemon relied heavily, if not exclusively, on the so-called exculpatory video in formulating his determination of probable cause, the Court's instructions provided "inadequate guidance as to the significance of the exculpatory information reviewed by Officer Lemon in the videotape." (Pl.'s Mem. 5-6.) Defendants counter that the proposed instruction was unwarranted and since the jury frequently saw the video during the trial, it was up to the them to decide whether it was exculpatory or inculpatory. (Resp. Br. 5-6.)

Fitzpatrick seems to rely on the legal proposition, as articulated in some cases, that a police officer, in making his probable cause determination, cannot "simply turn a blind eye toward potentially exculpatory evidence . . . in an effort to pin a crime on someone." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 305-06 (6th Cir. 2005) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999)). This principle has frequently been stated as, "'[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" *Andros v. Gross*, 294 Fed. Appx. 731, 734 (3rd Cir. 2008) (quoting *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000) (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (concluding no probable cause existed where officer ignored eyewitness testimony which would have exculpated plaintiff))).

What Fitzpatrick seemingly overlooks, however, is that Lemon simply gave the video evidence a different, but reasonable, construction. *Andros*, 294 Fed. Appx at 734. After all, this is not a case where the videotape, focused as it is on just the hallway, amounts to "plainly exculpatory evidence." *Kuehl*, 173 F.3d at 650.

Nevertheless, Fitzpatrick was free to argue, as he did at trial (Tr. 144-45), that the videotape was exculpating and that Lemon ignored it. Notably, this is not a case where Lemon left other potential investigatory avenues unexplored in a rush to "pin the crime on [D.F.]." *Radvansky*, 395 F.3d at 305-06. Indeed, since no one was talking (including the severely-beaten victim), it is hard to imagine what further investigation Lemon could have performed that would have revealed D.F.'s innocence. And somewhat contrary to Fitzpatrick's argument and his proposed jury instruction, there is no evidence that Lemon ignored the video. In fact, it is undisputed that he viewed it at the scene and noted D.F. running into the restroom and then

9

running out, establishing to a certainty that D.F. was in the restroom at the time of the beating. Accordingly, even if Fitzpatrick's proposed instruction is a correct statement of the law, it was not supported by the evidence. *Jaffee*, 51 F.3d at 1353.

Finally, the Court thoroughly instructed on the concept of probable cause, employing the language from the Seventh Circuit's pattern jury instruction No. 7.06 as part of the Court's Final Jury Instruction No. 14. Thus, the Court instructed the jury that in deciding whether Lemon had probable cause to arrest D.F., they were to "consider what [he] knew and what reasonably trustworthy information [he] had received." Therefore, the jury was aware Lemon was to consider *all* the trustworthy information before him, both inculpatory and exculpatory. Stated otherwise, the legal principle contained in Fitzpatrick's proffered instruction was covered by those given by the Court, and there is no basis to conclude that the jury was somehow misguided on the point or that Fitzpatrick was prejudiced. *Robinson v. Burlington N. R.R. Co.*, 131 F.3d 648, 654 (7th Cir. 1997); *Kovacich v. Benjamin*, 951 F.2d 114, 116 (7th Cir. 1991).

Consequently, it was not error to refuse to give Fitzpatrick's Proposed Final Jury Instruction No. 3.

### C. Proposed Jury Instruction No. 22

Finally, Fitzpatrick takes issue with the Court's decision not to give his last-minute, hand-written Proposed Final Jury Instruction No. 22, stating,

> There is no duty of an onlooker to a crime to render aid or help the victim of the crime. Not rendering aid cannot be considered in determining the existence of probable cause.

(Pl.'s Mem. Ex. C.) Fitzpatrick argues that the instruction would have informed the jury that D.F. had a right not to intervene or aid E.J., and that the instruction was important because it

negates the suggestion that D.F's failure to do so was a basis for probable cause. As Lemon argues, however, he did not arrest D.F. because of D.F.'s failure to conform his conduct to some legal duty, such as rendering aid to E.J.; rather, he properly considered D.F.'s hasty exit with the other boys and his returning to class without any mention of the incident to anyone who could help E.J.

Indeed, the fact that someone is identified and reported to have fled the scene of a crime is part of the "trustworthy information" a prudent police officer is entitled to consider when determining probable cause (*i.e.*, Court's Final Jury Instruction No. 14). "Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000); *Platt v. State*, 589 N.E.2d 222, 226 (Ind. 1992) (same). Consequently, when D.F. is seen on the video fleeing the scene of a severe beating, and then is known not to have reported it, that was something Lemon was entitled to consider. *See Wardlow*, 528 U.S. at 120; *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000) (finding that course of conduct after an occurrence is relevant to determining whether someone is an accomplice to a crime); *Platt*, 589 N.E.2d at 226.

Moreover, Fitzpatrick's instruction would have misled the jury. After all, Lemon was entitled to consider that it is counterintuitive for a person who commits a battery to then report it, let alone render aid to the victim. Fitzpatrick's proposed instruction, on the other hand, would have told the jury to discard this practical, commonsense point of view, and accordingly, there was no error to refuse it.[1]

---

[1] Because the jury concluded and the Court entered judgment on the fact that there was no constitutional violation, the Court did not need to reach the question of whether Lemon was qualifiedly immune. In a false arrest case, a police officer is entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (quoting *Humphrey v. Staszek*,

11

## IV. CONCLUSION

Fitzpatrick does not argue that the jury was misled on the issue of probable cause, only that there could have been a few refinements to the Seventh Circuit's pattern instruction. The instructions Fitzpatrick offers, however, are no improvement and in fact, were properly rejected as this Opinion and Order relates. Accordingly, since the jury was adequately and properly informed of the issues without Fitzpatrick's tendered instructions, and because he has not shown prejudice, his Motion for New Trial (Docket # 130) is DENIED.

SO ORDERED.

Entered on December 22, 2009.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge

---

148 F.3d 719, 725 (7th Cir. 1998)). At a minimum, however, after *Pringle*, 540 U.S. 366, it seems clear that a reasonable police officer in Lemon's position would have thought he had probable cause.